UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| DANTE CRIDDLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00079-RWS |
| | ) | |
| JASON LEWIS, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Dante Criddle to commence this civil action without prepayment of the filing fee. (Docket No. 2). Having reviewed the motion and the financial information contained therein, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's official capacity claim against defendant Megan Unknown. However, the Court will direct the Clerk of Court to issue process on defendants Jason Lewis, Benjamin Crass, Jason Wilson, Cole Hansen, and Megan Unknown in their individual capacities, as well as on defendants Lewis, Crass, Wilson, and Hansen in their official capacities, to the extent that plaintiff is seeking prospective injunctive relief. Finally, the Court will deny plaintiff's motion for preliminary injunction and temporary restraining order.

### **28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

Plaintiff has not submitted an inmate account statement. He states this is a result of his institution's refusal to supply him with one. (Docket No. 4 at 6). As such, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay the initial partial filing fee, he must provide documentation in support of his claim.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The

court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is currently incarcerated at the Southeast Correctional Center (SECC) in Charleston, Missouri. (Docket No. 1 at 5). He brings this civil action pursuant to 42 U.S.C. § 1983. His complaint names Warden Jason Lewis, Correctional Officer Benjamin Crass, Correctional Officer Jason Wilson, Correctional Officer Cole Hansen, and Nurse Megan Unknown as defendants. (Docket No. 1 at 2-4). They are all sued in both their official and individual capacities.

3

Plaintiff alleges that on January 29, 2019, he was housed in Housing Unit #2, B Wing, Cell #114 in administrative segregation. (Docket No. 1 at 5). Between 9:00 a.m. and 10:30 a.m., Officer Hansen approached plaintiff's cell and opened the food slot. Plaintiff states that Officer Hansen directed him to turn around and place his hands out of the food slot, so that he could be handcuffed. Plaintiff complied with this directive.

After being handcuffed, plaintiff asked why he was being restrained. (Docket No. 1 at 5-6). He states that Officer Hansen told him not to ask questions and to do as directed. (Docket No. 1 at 6). Several minutes later, Officer Wilson escorted another prisoner, Inmate Joseph Harris, to plaintiff's cell. Officer Wilson advised plaintiff that Inmate Harris would be his new cellmate.

Plaintiff states that he informed Officer Wilson and Officer Hansen that he had past issues with Inmate Harris. Specifically, he told Officer Wilson and Officer Hansen that Inmate Harris had alleged that plaintiff spit in his face. Furthermore, plaintiff told Officer Wilson and Officer Hansen that Inmate Harris was enrolled in the prison's mental health program and that he suffered from "multiple mental disabilities" that required him to take "psychotic medications." (Docket No. 1 at 6-7). In short, plaintiff claims that he "clearly informed" Officer Wilson and Officer Hansen that if Inmate Harris was placed in his cell, he would be assaulted. (Docket No. 1 at 7).

According to plaintiff, Officer Wilson responded by saying "that Prisoner Harris is a coward and that Prisoner Harris is not going to harm a fly." Plaintiff states that Officer Wilson also told him that all Inmate Harris does is "talk tuff sh-t," and that Inmate Harris does whatever Officer Wilson tells him to do. He further claims that Officer Wilson promised Inmate Harris contraband items if he assaulted plaintiff. (Docket No. 1 at 17). In response Officer Hansen allegedly said that he was "putting his money" on plaintiff. (Docket No. 1 at 7). At this point,

plaintiff requested protective custody. However, Officer Wilson and Officer Hansen denied this request.

Officer Wilson then radioed the control center to open the door to plaintiff's cell. (Docket No. 1 at 8). Inmate Harris was placed in the cell with plaintiff. Once Inmate Harris was inside, Officer Wilson directed Harris to place his hands out of the food slot. Officer Wilson removed Inmate Harris's restraints. Plaintiff states that he was unable to place his own hands in the food slot to have his handcuffs removed, because Inmate Harris would not let him. Thus, plaintiff remained in his handcuffs.

Plaintiff alleges that Inmate Harris began to physically assault him. He states that Inmate Harris struck him repeatedly in the head and face with a closed fist. He states that he was hit in both eyes, causing them to swell shut. He states that he was punched in the nose, causing it to bleed, and in the mouth, causing both lips to split open and bleed. While this occurred, plaintiff claims that he "begged and screamed" for Officer Wilson and Officer Hansen to stop Inmate Harris from attacking him. (Docket No. 1 at 8-9).

Meanwhile, Inmate Harris's assault continued. (Docket No. 1 at 9). Plaintiff alleges that Inmate Harris banged his head against the cell's concrete wall, splitting his forehead, leaving "large contusions and knots," and eventually rendering him unconscious. Plaintiff states that while unconscious, Inmate Harris continued to stomp and kick him, placed him in a chokehold, and began to "choke [him] to death."

While the assault took place, other prisoners began screaming and yelling to get Officer Wilson and Officer Hansen to stop Inmate Harris's assault. Instead, plaintiff claims that Officer Wilson took out a can of mace and sprayed plaintiff directly in the eyes and face. (Docket No. 1 at 10).

Plaintiff alleges that Inmate Harris was allowed to continually assault him for approximately fifteen minutes. During this time, plaintiff was in handcuffs and unable to protect himself. Plaintiff states that Officer Wilson and Officer Hansen stood outside and observed this assault without taking any action.

Ultimately, Sergeant Crass arrived on scene with several unknown correctional officers. Inmate Harris was given a directive to submit to handcuff restraints and complied. Inmate Harris was thereupon removed from the cell by Officer Wilson and Sergeant Crass. Plaintiff states that both Officer Wilson and Sergeant Crass threatened him. He states that Officer Wilson specifically told him not to mention anything about Inmate Harris assaulting him.

Plaintiff states that he remained in the same cell in which he had been assaulted. (Docket No. 1 at 11). He requested medical attention and Nurse Megan was called to treat him. However, plaintiff alleges that Nurse Megan "never fully examined" him. Rather, she merely looked through the cell door window and told him that there was "nothing seriously wrong with him" other than "a few bruises and bumps." Plaintiff states, though, that both his eyes were swollen shut, his nose was "busted," both lips were split, his forehead was split, he had double vision, and he was suffering "extreme pain" in his back and ribs. (Docket No. 1 at 11, 18). He alleges that Nurse Megan did not treat him in order to cover up the actions of Officer Wilson and Officer Hansen. (Docket No. 1 at 18). Following the assault, plaintiff states that he submitted multiple sick call requests, but that these were destroyed by Nurse Megan. (Docket No. 1 at 11, 19). He also states that Nurse Megan was the head supervisor over the sick call process. (Docket No. 1 at 11).

Plaintiff claims that he has attempted to address his complaint through SECC's administrative grievance process, but that he has been denied access. (Docket No. 1 at 12). He also

6

asserts that he has written to Warden Lewis about the incident, advising Lewis that he has been denied access to the grievance process.

According to plaintiff, Warden Lewis sent out a "memo" in December 2018, directing all correctional officers to inform prisoners that if they refused to move into a cell with another prisoner, physical force would be used to place that prisoner in the cell, and a major disciplinary action would be written. Plaintiff alleges that this policy was to be enforced no matter the circumstances. (Docket No. 1 at 13).

Because of Inmate Harris's alleged assault, plaintiff states he sustained the following injuries: swollen eyes; bloody nose; split lips; split forehead; knots and contusions; blurry double vision; severe headaches; and soreness in his back and ribs. (Docket No. 1 at 20). Plaintiff is seeking $500,000 in damages. (Docket No. 1 at 21).

## Discussion

Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983. He alleges that Officer Wilson, Officer Hansen, and Officer Crass failed to protect him from an assault by another inmate; that Nurse Megan denied him medical care; and that Warden Lewis's policy of forcing prisoners to share a cell caused his assault. Having thoroughly reviewed and liberally construed plaintiff's complaint, and for the reasons discussed below, the Court will dismiss plaintiff's official capacity claim against defendant Megan Unknown. However, the Court will direct the Clerk of Court to issue process on defendants Jason Lewis, Benjamin Crass, Jason Wilson, Cole Hansen, and Megan Unknown in their individual capacities, as well as on defendants Lewis, Crass, Wilson, and Hansen in their official capacities, to the extent that plaintiff is seeking prospective injunctive relief.

**A. Official Capacity Claims Against Defendants Lewis, Crass, Wilson, and Hansen**

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Defendants Lewis, Crass, Wilson, and Hanson are all alleged to work for SECC, which is part of the Missouri Department of Corrections. Thus, plaintiff's official capacity claims are actually claims against the Department of Corrections, rather than the individual defendants.

To the extent that plaintiff is seeking money damages, he has failed to state a § 1983 claim against the Missouri Department of Corrections. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983." *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017). *See also Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Thus, to the extent that plaintiff is seeking

money damages against defendants Lewis, Crass, Wilson, and Hansen in their official capacities, such claims must be dismissed.

However, a state official acting in his or her official capacity can be sued under § 1983 for declaratory or injunctive relief. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989) (explaining that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State"); and *Calzone*, 866 F.3d at 872 (explaining that a state official can be sued in an official capacity for declaratory and injunctive relief because those claims are treated as an action against the official personally and not against the state).

To prevail on an official capacity claim, a plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

Here, plaintiff asserts that his constitutional rights were violated due to an unconstitutional policy. Specifically, he references a memo promulgated by Warden Lewis in December 2018 that directs all correctional officers to "force prisoners to cell with other prisoners no matter what the circumstances." (Docket No. 1 at 12-13). Plaintiff alleges that this policy barred Inmate Harris from refusing to be plaintiff's cellmate, despite their history of negative interactions, and made it impossible for plaintiff to receive protective custody away from Inmate Harris. (Docket No. 1 at 13). Due to this policy, plaintiff claims that Inmate Harris was placed in his cell, whereupon he

9

was "brutally beaten." To the extent that plaintiff is seeking prospective injunctive relief against defendants Lewis, Crass, Wilson, and Hansen to keep them from carrying out this policy in the future, plaintiff's claims are sufficient for purposes of § 1915 review. As such, the Clerk of Court will be directed to issue process on defendants Lewis, Crass, Wilson, and Hansen in their official capacities for prospective injunctive relief only.

**B. Official Capacity Claim Against Defendant Megan Unknown**

Defendant Megan Unknown is alleged to work for Corizon, a private company that contracts with the Missouri Department of Corrections to provide medical services to inmates. As noted above, an official capacity claim against an individual is a claim against that individual's employer. A company such as Corizon that is acting under color of state law cannot be held liable on a respondeat superior theory under § 1983. *See Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support such a claim, plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983").

Here, plaintiff does not allege any facts demonstrating that Corizon had a policy or custom or undertook an official action that caused him an actionable injury. The only policy that plaintiff points to in his complaint is one allegedly set by Warden Lewis that forced inmates to cell with other inmates no matter the circumstances. There is no indication that Corizon, as a medical services provider, had any connection to this penological policy. Furthermore, while plaintiff alleges that Nurse Megan Unknown was deliberately indifferent to his medical needs, he does not

10

establish that this denial resulted from a Corizon policy, custom, or official action. Therefore, plaintiff's official capacity claim against defendant Megan Unknown must be dismissed.

### C. Individual Capacity Claim Against Warden Lewis for Failure to Protect

Plaintiff's failure to protect claim against Warden Lewis in his individual capacity is sufficient to survive initial review.

Liability in a § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Typically, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). However, "[e]ven if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). In requiring that a plaintiff allege that the defendant was personally involved in the deprivation of his constitutional rights, the defendant is assessed relative to his authority over the claimed constitutional violation. *Id*.

Plaintiff does not claim that Warden Lewis was present during his purported assault on January 29, 2019. However, he does allege that Warden Lewis instituted a policy in December 2018 that forced prisoners into cells with each other, regardless of the circumstances and despite what issues might arise. According to plaintiff, prisoners who refused to obey were physically forced into the cells and received major disciplinary reports. Based on this policy, Inmate Harris was placed into plaintiff's cell despite the risk caused by their past negative history, and despite

Inmate Harris's mental instability, resulting in an assault that left plaintiff injured. The Court must accept these allegations as true and make all reasonable inferences in plaintiff's favor. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). As such, plaintiff's allegations against Warden Lewis are sufficient for purposes of § 1915 review. Therefore, the Clerk of Court will be directed to issue process on Warden Lewis in his individual capacity as to plaintiff's failure to protect claim.

### D. Individual Capacity Claims Against Defendants Crass, Wilson, and Hansen for Failure to Protect

Plaintiff's failure to protect claims against defendants Crass, Wilson, and Hansen in their individual capacities is adequate for purposes of initial review.

Being subjected to assault is not part of the penalty that criminal offenders must pay for their offenses. *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007). As such, prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). Prison officials must take reasonable measures to guarantee inmate safety and to protect prisoners from violence at the hands of other prisoners. *Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004). However, not every injury suffered by one prisoner at the hands of another prisoner translates into constitutional liability. *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010). "Rather, prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018).

To prove an Eighth Amendment violation, an inmate must fulfill two requirements, one objective and one subjective. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement is that, viewed objectively, the alleged deprivation of rights is sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective inquiry and

requires that the prisoner prove that the prison official had a "sufficiently culpable state of mind." *Id*. "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007).

Plaintiff asserts that prior to his assault, Sergeant Crass knew that Inmate Harris refused to share a cell with any other inmate, including plaintiff. He further states that Sergeant Crass denied Inmate Harris's request to be placed in protective custody in a single-man cell. Instead, Sergeant Crass directed that Inmate Harris be placed in a two-man cell, either by force or choice. According to plaintiff, this led to an unstable, mentally disturbed prisoner being placed in his cell.

Plaintiff further alleges that Officer Wilson and Officer Hansen placed Inmate Harris in plaintiff's cell, despite plaintiff warning them of the likelihood of assault. He further claims that Officer Wilson offered Inmate Harris contraband to assault him. The two correctional officers then did nothing when Inmate Harris assaulted plaintiff, who was still in handcuffs. Plaintiff alleges that Officer Wilson and Officer Hansen observed the assault for approximately fifteen minutes, without attempting to intervene. For purposes of initial review, these allegations are enough to show that defendants Crass, Wilson, and Hansen knew of and disregarded an excessive risk to plaintiff's safety. Therefore, the Clerk of Court will be directed to issue process on defendants Crass, Wilson, and Hansen in their individual capacities on plaintiff's failure to protect claims.[1]

---

[1] Plaintiff also claims each of these defendants were deliberately indifferent to his serious medical needs. However, plaintiff does not provide facts to demonstrate the nature of their alleged deliberate indifference, thus failing to state a claim. *See Johnson v. Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) ("A pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief"). Plaintiff further claims that Sergeant Crass and Officer Wilson threatened him with bodily harm if he reported the incident to the prison administration. "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). Moreover, plaintiff has not alleged that Sergeant Crass

### E. Individual Capacity Claim Against Defendant Wilson for Excessive Force

Plaintiff's allegation regarding Officer Wilson's use of excessive force is adequate for purposes of initial review.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Plaintiff alleges that while being assaulted by Inmate Harris, Officer Wilson repeatedly sprayed him in the eyes and facial area with mace. He further states that at the time Officer Wilson deployed the mace, he was handcuffed and unable to protect himself, and that Inmate Harris was the aggressor. This is enough to survive § 1915 review. Therefore, the Clerk of Court will be

---

or Officer Wilson took official adverse action against him for attempting to report the incident, such as would support a claim of retaliation under the First Amendment. *See Spencer v. Jackson Cty., Mo.*, 738 F.3d 907, 911 (8th Cir. 2013). Thus, plaintiff's allegations regarding Sergeant Crass's and Officer Wilson's purported threats are not actionable.

directed to issue process on Officer Wilson in his individual capacity on plaintiff's claim of excessive force.

**F. Plaintiff's Individual Capacity Claim Against Defendant Megan Unknown for Deliberate Indifference to Medical Needs.**

Plaintiff's allegation that Nurse Megan Unknown was deliberately indifferent to his medical needs is sufficient for purposes of initial review.

The government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). However, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Plaintiff's facts establish that after being assaulted by Inmate Harris, Nurse Megan Unknown was summoned to provide medical care. However, after observing him through the window of the cell door, she pronounced that plaintiff did not require attention, despite plaintiff allegedly having obvious injuries such as two swollen eyes, a bloody nose, split lips, and a split

15

forehead. Plaintiff further claims that Nurse Megan Unknown destroyed his later sick call requests for treatment. This is sufficient for purposes of § 1915 review. Therefore, the Clerk of Court will be directed to issue process on Nurse Megan Unknown in her individual capacity on plaintiff's claim of deliberate indifference.

**Motion for Preliminary Injunction and Temporary Restraining Order**

Plaintiff has filed a motion for preliminary injunction and temporary restraining order. (Docket No. 4). For the reasons discussed below, the motion will be denied.

In his motion, plaintiff states that he was physically assaulted in his cell by another inmate, after that inmate was placed there by Officer Wilson and Officer Hansen. (Docket No. 4 at 2). The incident took place on January 29, 2019 and resulted in plaintiff suffering various injuries. He claims that since the incident, he has been denied treatment by "Corizon Medical Staff," who have destroyed his requests. (Docket No. 4 at 3). He further asserts that Officer Wilson and Sergeant Crass both hold supervisory positions over him, and that they have informed other prisoners that he is a snitch. He alleges that both Officer Wilson and Sergeant Crass are "constantly threatening" him because he will not drop his complaint against them. (Docket No. 4 at 4). Finally, plaintiff complains of a disciplinary measure he refers to as the "Iron Horse." According to plaintiff, this consists of a seat of iron bars that prisoners are made to sit upon while shackled for two hours straight. Plaintiff does not claim that he has been subjected to the Iron Horse, but alleges that Inmate Harris, the prisoner who assaulted him, chose to "beat [him] up" to "avoid the torture of the Iron Horse." (Docket No. 4 at 5).

Plaintiff requests that the Court grant a protective order against Officer Wilson, Officer Hansen, and Sergeant Crass. (Docket No. 4 at 5). He also seeks an order terminating the use of the Iron Horse.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 557 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). *See also Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

In the prison context, a request for injunctive relief must always be viewed with great caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). For an injunction to issue, "a right must be violated" and the court must determine whether "a cognizable danger of future violation exists and that danger must be more than a mere possibility." *Id.* at 521.

Here, after reviewing the factors listed above, plaintiff's motion must be denied. First, he has not made a showing of irreparable harm. While he claims that he has not been receiving medical treatment since the January 29, 2019 assault, he does not establish how he has been injured by the alleged denial of treatment. Moreover, the injunctive relief that he seeks does not pertain to the Corizon Medical Staff whatsoever. With regard to the purported threats made by Officer Wilson and Sergeant Crass, plaintiff's allegations are too vague to show that he is in danger of irreparable harm, and do not indicate that he is in any kind of imminent danger requiring immediate intervention.

Second, with regard to plaintiff's request that the Court terminate the so-called Iron Horse, granting plaintiff's motion would place the Court in the position of injecting itself into the

problems of prison administration. Judicial restraint is called for in this context and militates against the granting of plaintiff's motion.

For these reasons, the Court finds that plaintiff's motion for a preliminary injunction and temporary restraining order must be denied.

## Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). The motion will be denied at this time. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson*, 902 F.3d at 850. When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction and temporary restraining order (Docket No. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claim against defendant Megan Unknown is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against defendants Jason Lewis, Benjamin Crass, Jason Wilson, and Cole Hansen are **DISMISSED** without prejudice to the extent that plaintiff is seeking monetary damages. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to issue process or cause process to issue on defendants Jason Lewis, Benjamin Crass, Jason Wilson, and Cole Hansen in their official capacities to the extent that plaintiff is seeking prospective injunctive relief.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to issue process or cause process to issue on defendant Jason Wilson in his individual capacity as to plaintiff's claims of failure to protect and excessive force.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to issue process or cause process to issue on defendants Jason Lewis, Benjamin Crass, and Cole Hansen in their individual capacities as to plaintiff's claims of failure to protect.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to issue process or cause process to issue on defendant Megan Unknown in her individual capacity as to plaintiff's claim of deliberate indifference to medical needs, pursuant to the waiver agreement the Court maintains with Corizon.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

A separate order of partial dismissal will be entered herewith.

Dated this 23rd day of May, 2019.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE