UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

DANTE CRIDDLE,                              )
                                           )
          Plaintiff,                       )
                                           )
     vs.                                   )        Case No. 1:19 CV 79 RWS
                                           )
JASON LEWIS, et al.,                       )
                                           )
          Defendants.                      )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion for summary judgment filed by

defendants Benjamin Crass, Jason Lewis, and Jason Wilson (Doc. 91) and the

cross-motion for summary judgment filed by plaintiff (Doc. 92).[1]  Plaintiff alleges

that he was attacked by a fellow inmate Joseph Harris and then pepper sprayed by

defendant Wilson on January 29, 2019, while he was incarcerated at Southeast

Correctional Center (SECC) in Charleston, Missouri.  Defendants Crass and

Wilson are the correctional officers who escorted Harris to plaintiff's cell and

allegedly failed to protect him from the attack.  Wilson also allegedly used

excessive force by intentionally spraying him during Harris' attack.  Defendant

---

[1] The Court agrees with the defendants that plaintiff's Document 97 entitled "Summary Judgment" is really just a reply brief in support of his motion for summary judgment filed on April 23, 2020 (Doc. 92) and not a separately filed, untimely motion for summary judgment and has accordingly considered it as such.

Lewis is the warden at SECC and allegedly has an unconstitutional policy of requiring inmates to first enter a cell and uncuff before declaring a cellmate an enemy or seeking protective custody.  Plaintiff claims that he suffered injuries as result of the attack.[2]

In this *pro se* § 1983 complaint, plaintiff sues defendants[3] in their official capacities for prospective injunctive relief, seeking to bar them from carrying out Lewis' allegedly unconstitutional policy regarding cell assignments.  Plaintiff also brings individual capacity claims for monetary damages against defendants for failure to protect.  Plaintiff also brings an individual capacity claim for monetary damages against Wilson for excessive force.

Plaintiff and defendants seek summary judgment on plaintiff's complaint. As plaintiff has presented no admissible evidence that Lewis' allegedly unconstitutional policy regarding cell assignments actually exists, his claim for prospective relief will be dismissed.  Similarly, as this policy was the sole basis for his failure to protect claim against Lewis, Lewis is entitled to summary judgment on all claims asserted against him.  Crass is also entitled to summary judgment on plaintiff's failure to protect claim as plaintiff has presented no evidence that Crass

---

[2] Plaintiff also brings claims against the prison nurse Megan Crowe who allegedly failed to treat his injuries, but that claim is not at issue in the motion presently before the Court.

[3] For ease of reference, "defendants" as used in this Memorandum and Order refers only to defendants Crass, Lewis, and Wilson and does not include defendant Crowe.

knew that plaintiff and Harris declared each other as enemies and requested protective custody during the cell transfer.  However, genuine disputes of material fact preclude summary judgment on plaintiff's failure to protect and excessive force claims against Wilson.  These same disputes of fact preclude entry of judgment for Wilson based on his assertion of qualified immunity.

<u>Standards Governing Summary Judgment</u>

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive

a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. 242 at 252; *Davidson & Associates v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).  "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines*, 2008 WL 2609197 at *3 (8th Cir. 2008).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

<u>Relevant Background Facts as to Defendants Crass, Lewis and Wilson</u>[4]

The following basic facts underlying plaintiff's complaint are not in dispute.  On January 29, 2019, plaintiff was residing by himself in a two-person cell in Housing  Unit 2, Wing B, in administrative segregation at SECC.  Crass and Wilson escorted Harris to plaintiff's cell because Harris had been assigned as plaintiff's cellmate. Harris was transferred from his previous cell assignment

---

[4] These facts are being found solely for the purpose of ruling on the pending motions for summary judgment, and no party may rely on this Memorandum and Order at trial to prove, or disprove, any fact.

4

because he  had requested protective custody from his previous cellmate. To facilitate the cell transfer, plaintiff was placed in handcuffs and tethered to the cell door.  Harris was also handcuffed when he was placed in the cell.  Harris was uncuffed first and immediately began assaulting plaintiff, who was still handcuffed.  Wilson sprayed pepper spray into the cell and the attack eventually stopped.  Both plaintiff and Harris were then removed from the cell. Harris was later found guilty of assaulting plaintiff.

The remaining facts are hotly contested.  According to Crass and Wilson, prior to escorting Harris to plaintiff's cell, Crass and Wilson  contacted the prison "bed broker" to determine if Harris and Plaintiff were listed as enemies and were compatible as cellmates.  As they were not officially listed as enemies, Crass and Wilson concluded that plaintiff and Harris could be housed together.   Crass and Wilson both state in their affidavits that they did not know Harris posed a danger to plaintiff and they were "unaware" that plaintiff and Harris had declared protective custody from each other or declared each other as enemies.

Plaintiff does not dispute that he had not listed Harris on his enemy list. However, both plaintiff and Harris testified that they each informed Wilson that they were enemies before Harris was placed in the cell and that each also requested protective custody from the other before Harris was placed in the cell

and uncuffed.  Plaintiff testified that he and Harris had argued repeatedly, including an altercation the day before the attack, and that Harris had threatened to kill him and his family.  He believed Harris was crazy and told Wilson that he feared for his life if Harris were placed in his cell.   Plaintiff has stated this in his signed and verified complaint, in numerous subsequent filings with this Court, and in his deposition, a complete copy of which has been filed with the Court as Document 99.

Harris testified similarly in a signed and verified affidavit filed as a supplemental exhibit to plaintiff's complaint (Document 51, Exhibit A).  Harris swears that he declared plaintiff his enemy on January 28, 2019, after their argument, and that he informed Wilson of that fact before he was escorted to plaintiff's cell.  Despite this information, Wilson told Harris that he was going into the cell with plaintiff by force if necessary.  Harris further testified that both he and plaintiff stated to Wilson that they were enemies before he was taken to the cell, that plaintiff said he was fearful of being attacked if Harris was placed in his cell, and that both Harris and plaintiff requested protective custody before Harris was placed in the cell.[5]

---

[5] Plaintiff also alleges that Wilson "paid" Harris to attack him, claiming that Harris admitted it to another inmate.  In his affidavit, however, Harris only states that Wilson offered him extra food trays if he waited until the next shift to check out of the cell.  (Doc. 51, Exhibit A).  Harris claims that he attacked plaintiff first to avoid being attacked by plaintiff once plaintiff's handcuffs were removed.  Harris also alleges that, after the attack, Wilson offered him cigarettes to "support his version of events" because plaintiff had filed an Informal Resolution Request over the incident.

Plaintiff also offers the signed and sworn declaration of fellow inmate George Proby, Jr. in support of his claims.  (Doc. 1-4; Doc. 51, Exhibit B).  Proby was housed in a cell close to plaintiff's on the day in question and testifies that he heard both plaintiff and Harris declare each other to be enemies and request protective custody prior to Harris being placed in the cell.  Proby also claims that he heard plaintiff tell Wilson that he was afraid of being attacked if Harris was placed in his cell, and he heard Harris tell Wilson that he would assault plaintiff if he was placed in the cell.  According to Proby, Wilson ignored their pleas for protective custody and told them that they were going to be cellmates.  Proby heard Harris assaulting plaintiff and when Proby asked Wilson to stop the assault, Wilson told him to "mind his own business."

The Court has carefully reviewed the entire record in this case.  Although plaintiff repeatedly mentions also informing correctional officer Cole Hansen that Harris was his enemy and that he was fearful for his life if Harris were placed in his cell, at no point does plaintiff specifically state that he made any such statements directly to Crass.  None of the other witnesses have testified that any similar statements were made directly to Crass, either by plaintiff or Harris.  Although Cole Hansen was originally named as a defendant in this lawsuit,

---

Harris does not explain what he means by Wilson's "version of events" and states that he declined Wilson's request.

plaintiff voluntarily dismissed his claims against Hansen by motion dated February 13, 2020.  (Doc. 70).  The Court granted the motion and dismissed Hansen from this lawsuit on February 20, 2020.  (Doc. 71).[6]  Although plaintiff's complaint alleges that Crass told Harris he was going into plaintiff's cell either by choice or physical force, Harris testified that it was actually Wilson, not Crass, who made this comment to him.  (Doc. 51, Ex. A).  Plaintiff does not allege that he heard Crass make this statement, only that it was made.  In his deposition, plaintiff testified only about statements made to Wilson.

Defendants admit that their standard operating procedures state that if plaintiff and/or Harris had objected to the cell transfer and declared protective custody from each other at the time of the transfer, then the cell transfer should not have taken place and that the inmate declaring protective custody should have immediately been taken into custody or supervised until he was moved into temporary administrative segregation.  (Doc. 91- 8 at 3) ("When an offender requests protective custody, the staff person involved will immediately take the offender into custody and contact the shift supervisor.").  Crass and Wilson further testify by affidavit that, "to their knowledge," the standard operating procedures were followed during the cell transfer.  In other words, Crass and

---

[6] In his deposition, plaintiff explained that he dismissed Hansen from the lawsuit because he was mistaken about Hansen being there.  Instead, he testified that it was a new guard in training who was present.  Plaintiff does not state that he confused Hansen with Crass.

Wilson deny that plaintiff and Harris declared each other to be enemies and sought protective custody from each other during the cell transfer process. Instead, they maintain that both plaintiff and Harris submitted to the cell transfer without complaint or incident until Harris' cuffs were removed.

In support of his excessive force claim against Wilson, plaintiff alleges that Wilson intentionally pepper sprayed him during Harris' attack.  Wilson sprayed pepper spray through the food port during Harris' attack and claims that plaintiff was collaterally exposed to the pepper spray, which was deployed to stop the attack and prevent further harm to plaintiff.    However, Harris tells a different story.  In his affidavit, Harris  states that after he began attacking plaintiff Wilson shot pepper spray into the cell, causing him to run to the back of the cell and stop attacking plaintiff.  Harris then testifies that Wilson "blast[ed] [plaintiff] with pepper spray for no reason spraying [excessively] . . . ." (Doc. 51, Exhibit A).  In his deposition, plaintiff testified that he often got into verbal altercations with correctional officers, including Wilson, and that after one such altercation following Harris' attack Wilson stated, "That's why I sprayed your ass." (Doc. 99-1 at 46).

Plaintiff claims that Lewis issued a memorandum in December of 2018 requiring inmates to either be housed together "whatever the circumstances" and/or requiring that inmates first be placed in a cell together and uncuffed

before being allowed to declare each other enemies or request protective custody. Plaintiff has offered no admissible evidence that this policy exists, either in written or unwritten form.  Plaintiff has not produced the alleged memorandum, and defendants deny such memorandum or policy exists.  Plaintiff stated in his deposition that unnamed guards (not defendants) allegedly told him and other inmates about the policy.  (99-1 at 64-65).

Finally, footage from plaintiff's housing unit during the incident was produced in discovery,[7] but it does nothing to support either side's version of events.[8]  The footage shows only the housing area outside of plaintiff's cell and does not show anything inside plaintiff's cell.  Correctional officers (presumably including Crass and Wilson) can be observed standing outside the cell, but the footage does not show Wilson spraying pepper spray into the cell or anything of Harris' attack.  There is no sound on the footage.

<u>Discussion</u>

In his official capacity claim against defendants for prospective relief, plaintiff seeks to enjoin the enforcement of a policy he alleges was issued through a December 2018 memorandum to SECC correctional officers by

---

[7] This footage was filed in dvd format as exhibits to Document 56 and was placed in the Court's paper file storage.  (Docket Entry 1/16/20).

[8] This is in contrast to plaintiff's claim against defendant Crowe.  The footage as it relates to her is discussed in a separate Memorandum and Order granting summary judgment to defendant Crowe.

Lewis.  A plaintiff may  bring an official capacity suit to enjoin the enforcement of an unconstitutional  "official policy" when it was "a deliberate choice of a guiding principle or procedure  made by the municipal official who has final authority regarding such matters."  *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016) (internal quotation marks and citation omitted); *Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice  to follow a course of action made from among various alternatives by the official or  officials responsible . . . for establishing final policy with respect to the subject matter  in question") (internal quotation marks, citation, and alteration omitted).  A plaintiff seeking to enjoin such a policy may do so one of two ways.  First, a plaintiff can enjoin a facially unconstitutional policy by showing a statement of the policy and its exercise. *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385,  389 (8th Cir. 2007). Second, plaintiff can establish liability for a policy  that is facially constitutional by proving the existence of an unwritten, unconstitutional policy that was "a product of deliberate or conscious choice by the  policymakers." *Id*. at 390.

Here, plaintiff's official capacity claim against defendants fails because he has presented no admissible evidence that the alleged policy exists, either in written or unwritten form.  Plaintiff has failed to come forward with the memorandum that

Lewis allegedly wrote in December of 2018, and defendant Lewis denies that he ever wrote such a memorandum or that he ever issued such an unwritten policy. Defendants Crass and Lewis further deny ever seeing such a written memorandum or knowing about such an unwritten policy regarding cell assignments as alleged by plaintiff.  Plaintiff's testimony during his deposition that he and other inmates "heard about" the policy from unnamed guards is hearsay and not admissible evidence that such a policy exists.  Because plaintiff has come forward with no admissible evidence demonstrating the existence of an unconstitutional policy, his official capacity claim for prospective injunctive relief against defendants fails as a matter of law.

For the same reason, plaintiff's failure to protect claim against Lewis must also be dismissed.  The sole basis for plaintiff's individual capacity claim against Lewis was that he allegedly issued a policy requiring inmates to accept cell assignments "whatever the circumstances" and/or required inmates to first enter a cell and uncuff before declaring a fellow inmate to be an enemy or seeking protective custody.  As stated above, plaintiff has no admissible evidence that this policy exists.  As plaintiff does not allege that Lewis personally participated in his cell transfer or was present during Harris' attack, his failure to protect claim against Lewis must be dismissed.  *See*, *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (personal liability under § 1983 "requires a causal link to, and

direct responsibility for, the alleged deprivation of rights); *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("a general responsibility for  supervising the operations of a prison is insufficient to establish the personal  involvement required to support liability.")

Plaintiff alleges that Crass and Wilson failed to protect him from being attacked by Harris.  The Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other prisoners.  *Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998).  To state a failure to protect claim, plaintiff is required to allege that (1) defendant was aware of facts from which he could infer the existence of a substantial risk of serious harm to him, (2) he actually drew the inference, and (3) he failed to take reasonable steps to protect him.  *See Farmer v. Brennan*, 511 U.S. 825, 836-38, 844 (1994).  Therefore, a prison official violates the Eighth Amendment if he or she "acts with deliberate indifference to a substantial risk of harm to the prisoner."  *Perkins*, 161 F.3d at 1130 (citing *Farmer*, 511 U.S. at 834).

Deliberate indifference has both an objective and a subjective component. The objective component requires the prisoner to demonstrate a substantial risk of serious harm, and the subjective component requires the prisoner to show that the official had a culpable state of mind; that is, that he actually knew of, but disregarded, that risk.  *Blades v. Schuetzle*, 302 F.3d 801, 803 (8th Cir. 2002)

13

(quoting *Perkins*, 161 F.3d at 1130).  With respect to the subjective component, the official must be aware of facts from which he could infer the existence of a substantial risk of serious harm, and he must also draw the inference.  *Farmer*, 511 U.S. at 837.  The Eighth Amendment is not violated when the official fails "to alleviate a significant risk that he should have perceived but did not."  *Id.* at 838. Assault by a fellow inmate constitutes "serious harm."  *Jensen v. Clarke*, 94 F.3d 1191, 1198 (8th Cir. 1996).

Here, plaintiff offers no evidence that Crass was aware of facts from which he could infer the existence of a substantial risk of serious harm to plaintiff by placing Harris in his cell and that he disregarded that risk. Although the record is replete with evidence about Wilson, there is no evidence that Crass was ever told by plaintiff or Harris that they were enemies, that they were declaring protective custody from each other during the cell transfer process, or that he heard plaintiff state he was fearful for his life if Harris was placed in the cell.  There is also no evidence in the record that Crass knew about the argument plaintiff and Harris had the day before the attack.[9]  There is

---

[9] Although it is permissible for the Court to rely on allegations made in plaintiff's verified complaint when deciding a summary judgment motion, *see Berry v. Doss*, 900 F.3d 1017, 1022 (8th Cir. 2018), plaintiff cannot evade summary judgment here by pointing to the allegation in his complaint that Crass told Harris he was going into plaintiff's cell even if by force given that plaintiff does not allege that he personally heard Crass make this statement and Harris has testified that it was Wilson, not Crass, who made this threat.

no vicarious liability under § 1983, and to survive summary judgment plaintiff must demonstrate that each defendant, through his own individual actions, violated his constitutional rights. *See  Marsh v. Phelps County*, 902 F.3d 745, 754 (8th Cir. 2018).   The Court cannot impute Wilson's alleged knowledge to Crass and it cannot assume, without any admissible evidence, that Crass must have heard the statements made by plaintiff and Harris to Wilson simply because he was part of the cell transfer process.  In his affidavit, Crass states that, prior to escorting Harris to plaintiff's cell, he contacted the prison "bed broker" to determine if Harris and Plaintiff were listed as enemies and were compatible as cellmates.  As they were not officially listed as enemies, he and Wilson concluded that plaintiff and Harris could be housed together.   Crass states that they did not know Harris posed a danger to plaintiff and that he was unaware that plaintiff and Harris had declared protective custody from each other or declared each other as enemies.  In the absence of any admissible evidence which refutes Crass' sworn statement, Crass has demonstrated that he is entitled to judgment as a matter of law on plaintiff's failure to protect claim brought against him.  Accordingly, plaintiff's failure to protect claim against defendant Crass must be dismissed.

Wilson relies on the same arguments made by Crass to request summary judgment in his favor on plaintiff's failure to protect claim, claiming

that plaintiff has no evidence that he actually knew that plaintiff faced a

"substantial risk of serious harm" from Harris when he placed Harris in the cell.

In support of his argument, Wilson relies on the fact that he contacted the "bed

broker" to determine whether plaintiff and Harris were compatible cell mates.

Unlike plaintiff's claim against Crass, however, plaintiff has presented

admissible evidence which, if believed, could support a reasonable jury's

finding that Wilson violated plaintiff's eighth amendment rights by knowingly

failing to protect him from a substantial risk of serious harm.  Here, both

plaintiff and Harris have both testified that they each informed Wilson that they

were enemies before Harris was placed in the cell and that each also requested

protective custody from the other before Harris was placed in the cell and

uncuffed.  Plaintiff testified that he told Wilson that he feared for his life if Harris

were placed in his cell.  Harris also avers that he declared plaintiff his enemy on

January 28, 2019, after their argument, and that he informed Wilson of that fact

before he was escorted to plaintiff's cell.  Despite this information, Wilson told

Harris that he was going into the cell with plaintiff by force if necessary.  Harris

further testified that both he and plaintiff stated to Wilson that they were enemies

before he was taken to the cell, that plaintiff said he was fearful of being attacked

if Harris was placed in his cell, and that both Harris and plaintiff requested

protective custody before Harris was placed in the cell.  Plaintiff also offers the

testimony of Proby, a fellow inmate who was housed in a cell close to plaintiff's on the day in question. Proby also states that he heard both plaintiff and Harris declare each other to be enemies and request protective custody prior to Harris being placed in the cell. Proby also claims that he heard plaintiff tell Wilson that he was afraid of being attacked if Harris was placed in his cell, and he heard Harris tell Wilson that he would assault plaintiff if he was placed in the cell. According to Proby, Wilson ignored their pleas for protective custody and told them that they were going to be cellmates. Wilson denies that he knew that Harris posed a danger to plaintiff and that he was unaware that plaintiff and Harris had declared protective custody from each other or declared each other as enemies. However, he also admits that, if plaintiff and Harris had declared each other to be enemies and requested protective custody during the cell transfer process, prison policy dictates that the transfer should not take place, and that the inmate (or inmates) should either immediately be taken into protective custody or supervised until placement in protective custody. This is true whether or not Wilson had previously contacted the "bed broker" and was informed that plaintiff and Harris were compatible as cell mates. In this case, there is a genuine dispute of material fact as to whether Wilson was actually informed of the substantial risk of harm to plaintiff posed by placing Harris in his cell and knowingly disregarded that risk by placing Harris in the cell

anyway.  This genuine dispute of material fact cannot be resolved by the Court on cross-motions for summary judgment.  It will be up to a jury to assess the credibility of the parties and witnesses and decide which version of events to believe.

Plaintiff also alleges that Wilson used excessive force by pepper spraying him during Harris' attack.  The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment.  *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992); *see also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment").  When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017); *see also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force

that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Wilson argues that he is entitled to summary judgment because plaintiff has no evidence that plaintiff was intentionally pepper sprayed instead of just being collaterally exposed to the pepper spray, which was necessary to stop Harris from attacking plaintiff. While it may be true that an accidental or collateral exposure to pepper spray during an otherwise reasonable use of force may not give rise to plaintiff's excessive force claim, *see Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir. 2004), in this case there is a genuine factual dispute as to whether Wilson accidentally or intentionally sprayed plaintiff with pepper spray during Harris' attack. Here, plaintiff was tethered to the cell door with his hands handcuffed behind his back and was the victim of Harris' attack. There is no dispute that plaintiff did not fight back against Harris or disobey any commands of Wilson or any other correctional officers which would have justified the intentional use of force against him. Therefore, intentionally pepper spraying him under these circumstances would amount to an excessive use of force. *See Foulk v. Charrier*, 262 F.3d 687, 702 (8th 2001) (law is well-established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel

and unusual punishment clause).  Here, plaintiff has presented admissible

evidence which, if believed, would permit a reasonable jury to conclude that he

was intentionally pepper sprayed by Wilson to punish him for repeated verbal

altercations he was involved in with Wilson and other guards and was not, as

Wilson claims, only collaterally exposed to pepper spray when Wilson used it to

stop Harris from attacking him.  Although Wilson denies targeting plaintiff with

the pepper spray, Harris testified that after he began attacking plaintiff Wilson

shot pepper spray into the cell, causing him to run to the back of the cell and stop

attacking plaintiff.  Harris then avers that Wilson "blast[ed] [plaintiff] with

pepper spray for no reason spraying [excessively] . . . ."  (Doc. 51, Exhibit A).[10]

Moreover, plaintiff testified that Wilson admitted to him that he intentionally

"sprayed his ass" during the attack because he constantly berated him and the

other guards.  (Doc. 99-1 at 46).  It is not for the Court to determine whose

version of events is more credible when ruling a motion for summary judgment.

It will be up to a jury to weigh the evidence and determine whether or not Wilson

collaterally or intentionally pepper sprayed plaintiff.  The genuine disputes over

---

[10] When plaintiff was questioned in his deposition about Wilson dispersing a second burst of
pepper spray into the cell, he agreed that Harris was still attacking him at that time and that he
"guessed" the spray was to stop Harris.  However, his testimony does not convert this disputed
fact into an undisputed one given that plaintiff also testified that he was cowering on the floor,
stuck to the door, and could not see what was going on because of the pepper spray.  In contrast,
Harris testified that he personally observed Wilson intentionally and excessively spray plaintiff
"for no reason" with the second blast of pepper spray.

the material facts surrounding Wilson pepper spraying plaintiff preclude the entry of summary judgment for either party on plaintiff's excessive force claim.

Finally, Wilson[11] argues in perfunctory fashion that he is qualifiedly immune from liability based on the same reasons that he claims that he is entitled to summary judgment.[12]  Qualified immunity shields a government official from liability unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   An official sued in his individual capacity is entitled to summary judgment based on qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time so that a reasonable officer would have understood that his conduct violated that right. *Capps v. Olson*, 780 F.3d 879, 884 (8th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  If genuine disputes of material fact underlie either prong of the qualified immunity inquiry, the district court may not resolve the disputes of fact and qualified immunity must be denied. *See Wealot v. Brooks*, 865 F.3d 1119, 1125 (8th Cir.

---

[11] Although all of the defendants argue that they are entitled to qualified immunity, as only plaintiff's claims against Wilson remain the Court will only address the argument as it relates to Wilson.

[12] The argument is two paragraphs long  and contends that, "for the reasons articulated above," the defendants are entitled to qualified immunity.

2017) (noting courts may not resolve genuine issues of material facts under either prong and determining the plaintiff had identified two genuine disputes as to whether the officer's conduct was objectively reasonable); *see also Raines v. Counseling Assocs., Inc.*, 883 F.3d 1071, 1074-75 (8th Cir. 2018) (dismissing appeal of denial of qualified immunity for lack of jurisdiction and explaining a key factual issue underlying the reasonableness of the officers' actions, whether the suspect advanced on an officer prior to being shot, was both material and disputed).

Wilson does not argue that plaintiff's rights to be protected from attack by another inmate and to be free from the excessive use of force were not clearly established at the time of the alleged incident.  Instead he simply argues that plaintiff does not have evidence to support his claims.  However, as explained above, plaintiff has presented sufficient evidence which, if believed, would permit a reasonable jury to conclude that Wilson violated his constitutional rights.  As detailed above, there are numerous factual disputes surrounding what Wilson knew and did during the cell transfer process and whether Wilson violated plaintiff's clearly established rights.  For these reasons, Wilson is not entitled to qualified immunity on plaintiff's individual capacity claims.

As discovery in this case has closed, the trial of plaintiff's remaining claims against defendant Wilson will be set by separate Order of the Court.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [92] is denied.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment [91] is granted only as follows: defendants Benjamin Crass and Jason Lewis shall have summary judgment on all claims asserted against them, and defendant Jason Wilson shall have summary judgment only on plaintiff's official capacity claim asserted against him; defendant Jason Wilson's motion for summary judgment as to plaintiff's individual capacity claims asserted against him is denied.

**IT IS FURTHER ORDERED** that this case will be set for trial by separate Order of the Court.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 27th day of July, 2020.