UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DANTE CRIDDLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:19 CV 79 RWS |
| | ) |
| JASON LEWIS, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on defendant Megan Crowe's motion for summary judgment. Plaintiff alleges that he was attacked by a fellow inmate and then pepper sprayed by correctional officers on January 29, 2019, while he was incarcerated at Southeast Correctional Center in Charleston, Missouri. Plaintiff claims that he suffered injuries and requested medical attention, but that the prison's nurse, defendant Crowe, refused to properly examine him. Instead, he alleges that defendant Crowe looked at him through the cell door window, told him there was nothing seriously wrong with him, and then advised him to submit a sick call request. Plaintiff alleges that he then submitted numerous sick call requests but they were denied or destroyed by defendant Crowe. In his *pro se* complaint

brought under 42 U.S.C. § 1983, plaintiff contends that defendant Crowe was deliberately indifferent to his serious medical needs.[1]

Defendant Crowe moves for summary judgment. Because the undisputed facts demonstrate that defendant Crowe was not deliberately indifferent to plaintiff's serious medical needs as a matter of law, her motion for summary judgment will be granted.

Standards Governing Summary Judgment

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They

---

[1] Plaintiff also brings claims against the prison warden and the correctional officers allegedly involved in the incident, but those claims are not at issue in the motion presently before the Court.

must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

<u>Relevant, Undisputed Facts as to Defendant Crowe</u>

On January 29, 2019, correctional officers placed inmate Joseph Harris in plaintiff's cell. To accomplish the cell transfer, plaintiff was handcuffed and tethered to the cell door. Harris, who was also in handcuffs when he was placed in the cell, was uncuffed first and immediately began attacking plaintiff while he was still handcuffed. Plaintiff alleges that he was punched in the head and face and both eyes were swollen shut, his lips were split open, his head was banged into the concrete wall, he was kicked, and he was knocked unconscious. He contends that Harris then began to choke him. One of the defendant officers twice sprayed a chemical agent into the cell to stop the attack. Plaintiff was hit with the spray.

Plaintiff alleges he requested medical treatment and that Crowe came to

3

his cell but never examined him. He alleges she only saw him through the cell door window, told him there was nothing seriously wrong with him, and instructed him to submit a sick call request. Plaintiff contends he submitted multiple sick call requests, but they were denied or destroyed while Crowe was the supervisor of the sick call process.

There is surveillance footage of the housing unit outside of plaintiff's cell on the day of the incident that refutes plaintiff's allegations about Crowe. The footage was produced by defendants during discovery and was shown to plaintiff. It was also filed with, and has been reviewed by, the Court. This footage was filed in dvd format as exhibits to Document 56 and was placed in the Court's paper file storage. (Docket Entry 1/16/20). This footage shows Harris and plaintiff both being removed from the cell after the incident. Harris was handcuffed to a restraint chair. Plaintiff walked himself, escorted by officers, out in the hall to the eyewash station to wash his face. Crowe arrived at the eyewash station and assessed plaintiff face to face, not through the cell door. After assessment, Crowe determined that plaintiff only needed a shower to finish cleaning off the chemical agent. Crowe informed plaintiff on how to request medical care if his condition worsened, and then plaintiff was escorted to the showers. Crowe did not see plaintiff again that day and did not see him again before she left her employment at SECC on March 22, 2019.

4

She denies ever destroying any of his sick call requests.

On January 31, 2019, plaintiff submitted a Health Services Request (HSR) stating that Crowe told him she was going to get him Tylenol. He was scheduled for a nurse sick call in response to this HSR on February 1, 2019, but he refused the sick call. The refusal form indicates plaintiff stated he "don't need it" and he refused to sign the form.  On February 5, 2019, Plaintiff saw Nurse Practitioner Nina Hill for complaints of elbow pain from an elbow injury he sustained as a teenager.  Elbow x-rays showed he had a loose body in the olecranon fossa.  He continued to see nursing staff for complaints of elbow pain.

On May 16, 2019, plaintiff submitted an HSR stating he had submitted "multiple sick call requests" concerning injuries to his back when he was kicked and assaulted several months ago.  By this time, Crowe had been gone almost two months. He also wrote that he had back pain.  On May 24, 2019, Plaintiff saw Nurse Linda Alhfield about elbow pain. He reported he broke his elbow in a fight when he was ten years old.  He also reported lower back pain since January 29, 2019 when he "got beat up and kicked." Nurse Alhfield noted Plaintiff was unable to fully extend the right arm and had a possible deformity to the right elbow.  She assessed joint pain and back pain and provided acetaminophen. The medical records show that, following this visit, Plaintiff continued to complain of longstanding elbow pain but made no further complaints about back pain or any

5

other injury from the January 29, 2019 incident.

## Discussion

To maintain his claim against Crowe for medical mistreatment, plaintiff must demonstrate that she was deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). This involves both an objective and a subjective component. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997); *see also Farmer v. Brennan,* 511 U.S. 825 (1994). In a case concerning the deprivation of medical care, a plaintiff must demonstrate that (1) he suffered an objectively serious medical need; and (2) the defendant actually knew of the medical need but, subjectively, was deliberately indifferent to it. *See Grayson v. Ross*, 454 F.3d 802, 808–09 (8th Cir. 2006). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" *Jones v. Minnesota Dep't of Corrections*, 512 F.3d 478, 481 (8th Cir. 2008) (quoting *Coleman*, 114 F.3d at 784). When a delay in medical treatment is the alleged constitutional deprivation, the objective seriousness of the deprivation must also be measured "by reference to the effect of delay in treatment." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (quotation marks and quoted case omitted), abrogation on other grounds recognized by *Reece v. Groose*, 60 F.3d 487, 492 (8th Cir. 1995). "To establish

this effect, the [plaintiff] 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment[.]' " *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).  On summary judgment, plaintiff must offer evidence that a delay in treatment had a detrimental effect, and in the absence of such evidence, plaintiff "fail[s] to raise a genuine issue of fact on an essential element of his claim." *Laughlin*, 430 F.3d at 929; accord *Beyerbach*, 49 F.3d at 1327.

As for the second element, "[i]n order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Thompson v. King*, 730 F.3d 742, 746–47 (8th Cir. 2013) (quoted case omitted). "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate [.]" *Id.* (internal quotations and citations omitted).  Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106.

Under these standards, plaintiff's claim against Crowe fails as a matter of law.  Plaintiff's claim that he was denied any medical treatment by Crowe after the

incident is conclusively refuted by the footage, which shows that plaintiff was taken from the cell after the incident to the eye wash station and assessed face to face by Crowe. He was not, as he claimed, left in his cell and only examined through the cell door. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Harris*, 550 U.S. at 380. As plaintiff's allegations regarding Crowe are "blatantly contradicted" by the record, the Court is not required to adopt his version of events for purposes of ruling on the motion for summary judgment.

Nor can plaintiff demonstrate that he had an objectively seriously medical need that Crowe deliberately ignored or failed to treat. Plaintiff walked without assistance to the eye wash station to wash his face and eyes after being exposed to the pepper spray. He sits upright and without assistance on a bench awaiting assessment by Crowe. After assessment, Crowe determined that plaintiff only needed a shower to finish cleaning off the chemical agent. Crowe informed plaintiff on how to request medical care if his condition worsened, and then plaintiff was escorted to the showers. "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's

8

attention.'" *Jones*, 512 F.3d at 481 (quoting *Coleman*, 114 F.3d at 784). Plaintiff offers no evidence that any physician has ever diagnosed any of his alleged injuries sustained during the incident in question as requiring treatment beyond what was provided, and the undisputed evidence demonstrates that plaintiff's condition was not so obvious that even a layperson would recognize the need for treatment by a doctor. *See id.*

Moreover, plaintiff has no evidence that Crowe destroyed any of his sick call requests, an allegation which Crowe denies. He offers nothing beyond his own unsupported supposition that she did so, which is wholly insufficient to defeat summary judgment on this claim. He never observed her destroy any requests, nor does he contend that she ever admitted destroying any of his requests. "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines*, 536 F.3d 813, 818 (8th Cir. 2008). Instead, he attempts to hold her responsible as "head supervisor over the sick call process." Even if some of his sick call requests went unanswered or were destroyed, Crowe cannot be held vicariously liable for the actions of another. There is no vicarious liability under § 1983, and to survive summary judgment plaintiff must demonstrate that Crowe, through her own individual actions, violated his constitutional rights. *See Marsh v. Phelps County*, 902 F.3d 745, 754 (8th Cir. 2018). This is especially true

9

here where plaintiff first complained about "multiple sick call" requests going unanswered almost two months after Crowe was no longer employed at Southeast Correctional Center. For these reasons, plaintiff's claim that defendant Crowe denied him treatment for his serious medical needs fails as a matter of law.

To the extent that plaintiff's allegation that Crowe "failed to provide him Tylenol" is construed as a delay in treatment claim, it also fails as a matter of law because plaintiff has come forward with no "verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment[.]'" *Laughlin*, 430 F.3d at 929 (quoting *Hedgepeth*, 109 F.3d at 502). Here, two days after the incident plaintiff submitted an HSR stating that Crowe had promised him Tylenol. In response, plaintiff was scheduled for a nurse sick call the next day but he refused, claiming he did "not need it." Where plaintiff himself refused the requested treatment three days after the incident, he cannot demonstrate that Crowe's alleged failure to provide him Tylenol for two days amounted to a delay in treatment having a detrimental effect on any objectively serious medical needs. He has failed to raise a genuine issue of fact on an essential element of his claim. *Laughlin*, 430 F.3d at 929; accord *Beyerbach*, 49 F.3d at 1327.

Because Crowe was not deliberately indifferent to plaintiff's objectively serious medical needs, she is entitled to judgment as a matter of law on plaintiff's claims asserted against her.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Crowe's motion for summary judgment [79] is granted, and plaintiff's claims against defendant Crowe are dismissed with prejudice.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 27th day of July, 2020.